UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA TAYLOR, | ) | 5:15CV1518 |
| *f.k.a. Kekel* | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | REPORT AND |
| | ) | <u>RECOMMENDATION</u> |

McHARGH, MAG. JUDGE

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the court is whether the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff Cynthia Taylor's application for Social Security Disability and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 et seq., is supported by substantial evidence and, therefore, conclusive.

I.  PROCEDURAL HISTORY

On December 29, 2011, Plaintiff Cynthia Taylor[1] ("Taylor") applied for Disability and Supplemental Security Income benefits.  (Doc. 9, tr., at 22.)  Taylor

---

[1] Taylor was formerly known as Kekel.  (Doc. 9, tr., at 212.)

stated that she became unable to work because of her disabling condition on July 27, 2006. (Tr., at 234, 250.)  Taylor listed her physical or mental conditions that limit her ability to work as "Recurring blood clots in left leg, depression, asthma, diabetes." (Tr., at 261.)

Taylor's applications were denied initially and upon reconsideration. (Tr., at 186-188, 189-191, 198-199, 205-206, 208-209.)  On October 16, 2012, Taylor filed a written request for a hearing before an administrative law judge. (Tr., at 210.)

An Administrative Law Judge ("the ALJ") convened a hearing on January 15, 2014, to hear Taylor's case. (Tr., at 43-77.)  Taylor was represented by counsel at the hearing. (Tr., at 46.)  Gene Burkhammer ("Burkhammer"), a vocational expert, attended the hearing and provided testimony. (Tr., at 68-76.)

On February 28, 2014, the ALJ issued her decision applying the standard five-step sequential analysis[2] to determine whether Taylor was disabled. (Tr., at

---

[2] Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Id. § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Id. § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(v).

19-36.)  Based on her review, the ALJ concluded Taylor was not disabled.  (Tr., at

23, 35.)  Following the issuance of this ruling, Taylor sought review of the ALJ's

decision from the Appeals Council.  (Tr., at 6-8.)  However, the council denied

Taylor's request for review, thus rendering the ALJ's decision the final decision of

the Commissioner.  (Tr., at 1-3.)  Taylor now seeks judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Taylor briefs three legal issues:

1.  Did the ALJ violate 20 C.F.R. § 404.1527 by improperly rejecting
the opinion of Plaintiff's treating physician where the ALJ used
medical reasoning that is not in line with proper medical treatment,
research, or procedures?

2.  Did the ALJ err by assigning a residual functional capacity that is
not supported by substantial evidence?

3.  Did the ALJ err by finding work available in the national economy
despite a residual functional capacity finding that allows for unlimited
5-minute breaks throughout the day?

(Doc. 11, at 1.)


## II.  PERSONAL BACKGROUND INFORMATION

Taylor was born on September 7, 1967, and was 38 years old as of her alleged

disability onset date.  (Tr., at 34, 250.)  Accordingly, Taylor was at all times

considered a "younger person" for Social Security purposes.  See 20 C.F.R. §§

---

The claimant bears the burden of proof during the first four steps, but the burden
shifts to the Commissioner at five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,
529 (6th Cir.1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

404.1563, 416.963.  Taylor has a high school education, and is able to communicate in English.  (Tr., at 34, 260, 262.)  She has past relevant work as a help desk representative, data entry clerk, payroll clerk, and an office manager.  (Tr., at 34, 68-69.)

### III.  MEDICAL EVIDENCE

Disputed issues will be discussed as they arise in Taylor's brief alleging errors by the ALJ.  A short summary of relevant medical history follows here.  As noted earlier, Taylor applied for Disability and Supplemental Security Income benefits on December 29, 2011.  (Doc. 9, tr., at 22.)  Taylor had listed the conditions that limit ability to work as "Recurring blood clots in left leg, depression, asthma, diabetes."  (Tr., at 261.)  Although she did not initially list "irritable bowel syndrome" among her conditions, Taylor asserts that the focus at this point is on her struggles with IBS.  (Doc. 11, at 3.)

As far back as 2001, the record reflects that Taylor[3] complained of abdominal pain, cramping, and diarrhea, which at that point had been going on for several months.  On February 9, 2001, Thomas Loiudice, D.O., M.D., performed a colonoscopy on Taylor, to determine whether or not she had inflammatory bowel disease.  The procedure revealed no disease in the colon, mild proctitis in the rectal

---

[3] At that point, using her previous name, Kekel.

area, and the beginnings of some internal hemorrhoids.  The post-endoscopic diagnosis was "Proctitis, irritable bowel syndrome."  (Tr., at 485.)

At an October 7, 2008, appointment with Trevor Bullock, D.O., she complained of abdominal pain, nausea, and chronic, frequent diarrhea, and reported that she had last seen a gastroenterologist in 2001, and reported that she had the colonoscopy in 2001.  (Doc. 9, tr., at 549.)  Based on her complaints, Dr. Bullock diagnosed her with irritable bowel syndrome, and prescribed Bentyl, to be taken before meals and at bedtime.  (Tr., at 550.)

At a follow-up appointment with Dr. Bullock the next month, Taylor reported that she had begun the Bentyl, ". . . and she states that she is doing much better. Her [sic] she has decreased number of BMs throughout the day and she says they are more formed stools."  (Tr., at 546.)  She was instructed to continue the Bentyl and to have another follow-up exam.  (Tr., at 546-547.)

At a January 27, 2009, appointment with Dr. Bullock, Taylor raised a number of concerns (depression, diabetes, etc.), but his notes do not reflect any complaints or discussion of her IBS, except to note that Bentyl was among her medications.  (Tr., at 539-541.)

Over  three years later, at a September 20, 2012, check-up with Meredith Violet, D.O., Taylor reported that she was experiencing cramping pains and diarrhea, which began worsening several months previously. Taylor reported she had "started taking fiber again and taking Imodium without any improvement." (Tr., at 1022.)

5

At that time, Dr. Violet prescribed a continuation of the Bentyl, and reported that Taylor had an "unconcerning exam for acute abdominal issue    most likely IBS flare caused by worsening depression/anxiety symptoms." She was referred to GI for a probable colonoscopy because she reported rectal bleeding. (Tr., at 1023.)

The following month, Taylor had an appointment with gastroenterologist Corey J. Sievers, M.D., on October 22, 2012. Taylor reported constant, dull abdominal pain across her lower abdomen, with diarrhea and more frequent bowel movements. (Tr., at 876.) Dr. Sievers noted that Taylor reported a history of IBS for eleven years, and that her symptoms had been worsening over the past year, including frequent BM with urgency occurring 10 per day. (Tr., at 875.)

On referral from Dr. Sievers, a colonoscopy was performed on Taylor on December 18, 2012. The results of the examination were normal, except for the presence of large internal hemorrhoids. (Tr., at 880.)

Taylor returned to Dr. Sievers for a follow-up exam on April 22, 2013. She reported she was still having lower abdominal pain. "Since the last visit she has been doing about the same. 'good' days are 5-6 BM per day and 'bad' days are 8+ BM per day. Has 'good' days about 3 times per week." (Tr., at 878.) She reported that she had not had some of her prescriptions filled due to cost. Id.

Dr. Sievers prescribed a trial of Rifaxamine, and provided her samples and a discount card. He also suggested that she discuss with Dr. Violet changing her anti-depressants to a drug which was more beneficial for IBS patients. (Tr., at 878.)

At her appointment with Dr. Violet shortly thereafter, on May 2, 2013, primarily to discuss her diabetes.  Taylor also reported that the trial Rifaxamine did not work, that it increased diarrhea and muscle spasms.  (Tr., at 1003.)  They discussed changing her anti-depressant but Taylor resisted because some of her friends had tried the drug (Elavil) and gained large amounts of weight.  (Tr., at 1004.)

At a September 23, 2013, appointment with Elim Shih, Taylor complained of diarrhea and nausea.  Taylor reported her history of IBS and abdominal cramping, and that she takes imodium and Bentyl for treatment.  She complained that whenever she eats anything, she has immediate diarrhea, and that this had been ongoing for 9 days.  She also complained of lower abdominal pain which is different from her IBS pain.  Her chronic abdominal pain was described as diffuse crampiness or discomfort.  (Tr., at 993.)  She was instructed to continue her Bentyl prescription, and imodium for symptomatic relief.  (Tr., at 994-995.)

At a 6-month follow-up appointment with Dr. Sievers on October 21, 2013, Taylor reported she was battling C. difficile diarrhea the last six weeks.  (Tr., at 1055; see also tr., at 985.)  Dr. Sievers noted he was unable to determine the status of her IBS symptoms given that she had an active c. diff infection.  Dr. Sievers noted he would treat the c.diff with another round of Flagyl.  Taylor was to report for a follow-up exam in six weeks.  (Tr., at 1055.)

At her November 25, 2013, appointment with Dr. Sievers,  he determined that her c.diff infection had cleared.  Taylor reported that she had been doing well,

7

until the previous Thursday, when her IBS symptoms seemed to have worsened a little.  She reported that she was stressed and anxious, in part because it was her first Thanksgiving without her parents around.  Taylor said she had more episodes of diarrhea after eating, but that over-the-counter imodium helped somewhat.  (Tr., at 1057.)

Several weeks after her January 2014 hearing with the ALJ, Taylor's counsel contacted Dr. Sievers to inquire whether Taylor's hearing testimony was consistent with his experience and history treating her.  Counsel represented that

> Taylor testified that, due to her IBS, there will be days when she will use the restroom for bowel movements between 8 and 12 times, and each time she could be in the restroom between 5 and 20 minutes.

(Tr., at 1054.)  Dr. Sievers checked "yes" that this was consistent, and added a note that, "she has fulfilled criteria for IBS and we have tried [illegible] medications to help with her Bowel movements."  Id.  Dr. Sievers also checked "yes" to the query, whether Taylor's allegations were consistent with her chart notes and testing results.  Id.


## IV.  TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the vocational expert Burkhammer provided testimony.  (Doc. 9, tr., at 68-76.)  Burkhammer testified that Taylor had past work as a payroll clerk at a placement agency, which is sedentary, SVP: 4, with a DOT number of 215.382-014.  Also, at the same agency, office manager, light, SVP: 4, DOT 219.362-010.  Taylor also had employment as a data entry clerk, sedentary, SVP: 4, DOT 203.582-

8

054.  Her most recent position was as help desk representative, sedentary, SVP: 7, with a DOT number of 032.262-014.

The ALJ posed a hypothetical question concerning an individual who can do a range of sedentary work, with the ability to alternate positions every 30-60 minutes, as needed, while remaining on task.  The individual would have the occasional use of a cane, for example, when going to the bathroom; occasional use of foot controls bilaterally; frequent pushing and pulling of hand controls, and frequent handling and fingering, with the right hand.  Postural limitations would be occasional climbing of ramps and stairs; no climbing of ropes, ladders, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no exposure to unprotected heights, or moving mechanical parts; and no operation of a motor vehicle.  The person should avoid concentrated exposure to humidity and wetness, extremes of hot and cold, as well as pulmonary irritants; and average but no high or strict production rate pace or quotas; would have occasional contact with others, but no conflict resolution, mediation, or anything involving intense or stressful interpersonal interactions.  The person would work in a low stress, static environment with infrequent changes, gradually introduced.  There would be an ability to take short bathroom breaks, with a bathroom in near proximity, or at least access to one.  The ALJ asked if such an individual would be able to do any of the past work?  (Tr., at 69.)

In response to the ALJ's question, Burkhammer stated that such a hypothetical individual would be able to do Taylor's past work, with the exception of

9

the office manager position, and the help desk position (because of the occasional interaction). (Tr., at 69-70.)

Burkhammer was then asked whether there were be additional work that such an individual could perform. He responded that there would be, at the sedentary level. The VE named, as one example, an addresser, DOT number 209.587-010. There are approximately 300 jobs locally, 4,000 in Ohio, and 100,000 nationally. However, the VE would exclude the rest of the sedentary, unskilled jobs available, because of the interaction requirements of the hypothetical. (Tr., at 70.)

The ALJ then modified the hypothetical, to remove the "occasional contact with others" limitation, while maintaining the low stress environment, and no conflict resolution limitations. (Tr., at 70.)

The vocational expert responded that there would be other jobs at the sedentary level, for this second hypothetical. The past relevant work already mentioned would still apply. Other jobs would include the addresser job. Also, food and beverage order clerk, DOT number 209.567-014. The VE stated that there are approximately 400 such jobs locally, 4,000 in Ohio, and 100,000 nationally. A third example would be receptionist, sedentary, SVP: 3, DOT number 237.367-010. There are approximately 600 jobs in the regional economy, 7,000 in Ohio, and 140,000 nationally. (Tr., at 71.)

The ALJ then proposed a third hypothetical, assuming an individual who would be able to do the range of work in the first two hypotheticals; however, the individual would require bathroom breaks in excess of the customary two per day,

and those bathroom breaks could exceed five minutes, up to 15 minutes per day. The question posed was whether such an individual would be able to maintain any kind of full time employment.  The VE's response was, no.  (Tr., at 71.)

Counsel for Taylor was then given the opportunity to question Burkhammer. Counsel asked the VE to clarify that the data entry clerk was a job involving constant fingering, whereas the first hypothetical indicated a limitation to frequent fingering, on the right hand.  The VE agreed that the data entry job was thus eliminated.  (Tr., at 72.)

Concerning the addresser position, the VE noted his understanding that the position was "kind of like a general, unskilled sedentary position," "almost a general office clerk."  He noted that the DOT has the handling and fingering at frequent. (Tr., at 72.)  Burkhammer testified that, the way the job is presently done, the frequent limitation would still allow the job to be performed.  (Tr., at 73.)

Counsel moved on to the issue of the limitation concerning the bathroom. (Tr., at 73.)  The VE clarified that the jobs he had identified would allow up to three breaks, five minutes each, in addition to the other limitations.  (Tr., at 74-75.)

Also, if the hypothetical was modified to knock the use of the dominant right hand down to only occasional, there is so much paperwork and data entry, etc., in the sedentary jobs that they would be eliminated under the scenario.  (Tr., at 75.)

11

## V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her

February 28, 2014, decision:

1.  The claimant meets the insured status requirements of the Social
Security Act through December 31, 2011.

2.  There exists new and material evidence concerning the claimant's
functioning, such that I do not adopt the findings of the prior
administrative law judge decision, dated September 7, 2010 (B1A.)

3.  The claimant has not engaged in substantial gainful activity since
July 27, 2006, the alleged onset date (20 CFR 404.1571 et seq., and
416.971 et seq.).

4.  The claimant has the following severe impairments: history of deep
vein thrombosis with blood clots, diabetes mellitus with neuropathy,
chronic obstructive pulmonary disease/asthma, hypertension,
dysthymic disorder, anxiety disorder, polysubstance abuse in
remission, adjustment disorder, obesity, irritable bowel syndrome (20
CFR 404.1520(c) and 416.920(c)).

5.  The claimant does not have an impairment or combination of
impairments that meets or medically equals the severity of one of the
listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20
CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and
416.926).

6.  After careful consideration of the entire record, I find that the
claimant has the residual functional capacity to perform sedentary
work as defined in 20 CFR 404.1567(a) and 416.967(a) with the
following additional limitations.  The claimant may alternate positions
every thirty minutes to one hour as needed, while remaining on task;
occasionally use a cane for mobility; occasionally push or pull with the
upper right extremity; frequently handle and finger with the upper
right extremity; occasionally balance, stoop, kneel, crouch, and crawl;
occasionally climb ramps and stairs, but never climb ladders, ropes, or
scaffolds.  She can have no exposure to unprotected heights, moving
mechanical parts, and she cannot operate a motor vehicle as part of a
job.  She must avoid concentrated exposure to humidity, extremes of
hot and cold, and pulmonary irritants.  The claimant can perform

12

simple, routine, repetitive tasks in an environment with average but no high production rate pace/quotas. The claimant is limited to a low stress static environment that does not [involve] conflict resolution, mediation, arbitration, or intense interpersonal interactions with others. The claimant must have the ability to take short bathroom breaks in addition to the standard average of two per workday. these breaks shall last no more than five minutes in duration on average. The claimant must have close proximity or access to bathrooms.

7.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8.  The claimant was born on September 7, 1967, and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from July 27, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Doc. 9, tr., at 25, 27, 30, 34-35.)

## VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of

13

the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered

disabled when she cannot perform "substantial gainful employment by reason of

any medically determinable physical or mental impairment that can be expected to

result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.


## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a

determination of whether the ALJ applied the correct legal standards, and whether

the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r

of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402

U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a

scintilla of evidence but less than a preponderance of the evidence.  See Kirk v.

Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the

record evidence is of such a nature that a reasonable mind might accept it as

adequate support for the Commissioner's final benefits determination, that

determination must be affirmed.  Id.

The Commissioner's determination must stand if supported by substantial

evidence, regardless of whether this court would resolve the issues of fact in dispute

differently, or substantial evidence also supports the opposite conclusion.  See

Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d

1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve

14

conflicts in the evidence, or decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).

## VIII. ANALYSIS

### A. Opinion of Treating Physician

The first issue raised by Taylor is:

> Did the ALJ violate 20 C.F.R. § 404.1527 by improperly rejecting the opinion of Plaintiff's treating physician where the ALJ used medical reasoning that is not in line with proper medical treatment, research, or procedures?

(Doc. 11, at 9.)

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians. Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. Id.; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544.  In other words, treating physicians' opinions are only given deference when supported by objective medical evidence.  Vance, 2008 WL 162942, at *3 (citing Jones v. Commissioner, 336 F.3d 469, 477 (6th Cir. 2003)).

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s).  Blakley, 581 F.3d at 406; Vance, 2008 WL 162942, at *3.  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight.  Blakley, 581 F.3d at 406-407; Winning v. Commissioner, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

Remand may be appropriate when an ALJ fails to provide adequate reasons explaining the weight he assigned to the treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner."  Kalmbach v. Comm'r of Soc. Sec., No. 09-2076, 2011 WL 63602, at *8 (6th Cir. Jan. 7, 2011) (quoting Wilson, 378 F.3d at 543-46).

16

In the relevant portion of the decision, the ALJ noted that Taylor, in her hearing testimony, alleged that her IBS caused her to use the restroom eight to twelve times per day.  The ALJ found that the record did not support those allegations.  The ALJ pointed out that the December 2012 colonoscopy did not show any significant disease in her colon, which was "a significant detracting factor" for her credibility on this issue.  (Tr., at 32.)  The ALJ stated that the prescribed treatment had been largely non-invasive and preventative, "a low-fiber diet and little else[4] for the claimant's alleged symptoms."  Id.  Considering the normal colonoscopy findings, the ALJ asserted that there was little physiological evidence to support her allegations.  In addition, the ALJ pointed to "large gaps in the record between when the claimant has alleged any serious symptoms of irritable bowel syndrome."  Id.  Nonetheless, "largely as a precaution," the ALJ found that Taylor must have the ability to take short bathroom breaks in addition to the standard average of two per workday, and she must have close proximity or access to the bathroom.  The ALJ gave "little weight" to the opinion of Dr. Sievers that Taylor had eight to twelve bowel movements per day, which the ALJ found to be "inconsistent with the findings and signs in this record, and appears to rely solely on the claimant's subjective allegations."  (Tr., at 32.)

---

[4]  The ALJ does not address the efficacy (or lack thereof) of the regimen of prescription drugs (Bentyl, for example) that were part of Taylor's treatment for IBS.  *See, e.g.*, doc. 9, tr., at 550, 546-547, 1023, 994-995.

17

Taylor states that Dr. Sievers, her treating gastroenterologist, issued an opinion[5] that Taylor would need to use a restroom for bowel movements as frequently as 8 to 12 times per day, and each visit to the restroom could last from five to twenty minutes.  (Doc. 11, at 9, citing doc. 9, tr., at 1054.)

Taylor contends that Dr. Sievers' response constitutes an "opinion about Plaintiff's limitations with regard to her capacity for work based upon her medical conditions, which is classified under Social Security rules as a treating physician's opinion." (Doc. 11, at 10.)  Taylor points out that, where a treating physician's opinion on the nature and severity of her impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the opinion is to be given controlling weight.  Whatever weight is assigned, the ALJ must always give good reasons to the weight given to the physician's opinion.  (Doc. 11, at 10, citing 20 C.F.R. § 404.1527(c)(2).)

Taylor asserts that the ALJ's analysis of her irritable bowel syndrome ("IBS") is contained in a single paragraph of the decision, where the ALJ rejected Taylor's testimony that her IBS causes her to use the restroom as many as 8 to 12 times per day, on the basis that the December 19, 2012 colonoscopy "fail[ed] to show any significant disease in the claimant's colon [which] represents a significant detracting factor for the claimant's credibility on this point." (Doc. 11, at 10-11,

---

[5]  Strictly speaking, Dr. Sievers did not "issue an opinion," but rather verified Taylor's hearing testimony as to the same requirements.  *See* tr., at 1054.

quoting tr., at 32.)  The ALJ also stated that there was little physiological evidence to support Taylor's allegations.  (Doc. 11, at 11, quoting tr., at 32.)  The ALJ rejected Dr. Sievers' opinion, as inconsistent with the record, "and [which] appears to rely solely on the claimant's subjective allegations."  Id.

Taylor argues that the ALJ's rationale, that the colonoscopy was a "significant detracting factor" because it "fail[ed] to show any significant disease," is flawed medical reasoning.  (Doc. 11, at 11, quoting tr., at 32.)  Taylor asserts that medical literature supplied to the Appeals Council confirms that IBS is a gastrointestinal disorder which exists in the absence of specific and unique organic pathology.  (Doc. 11, at 11, citing tr., at 9.)  However, evidence which was supplied to the Appeals Council after the hearing may not be considered for purposes of determining whether substantial evidence supports the ALJ's decision, because this court's review is confined to evidence that was available to the ALJ.  Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993); see also Hollon ex rel. Hollon v. Commissioner, 447 F.3d 477, 487 (6th Cir. 2006) (citing Wyatt v. Secretary, HHS, 974 F.2d 680, 685 (6th Cir. 1992)).  Evidence submitted for the first time to the Appeals Council may be considered only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. § 405(g), which Taylor has not invoked.  The Commissioner concedes, however, that the ALJ's statement that the colonoscopy findings detracted from the credibility of her IBS claims "may reflect a misjudgment" of the colonoscopy evidence by the ALJ.  (Doc. 14, at 7 n.2.)

In addition, Taylor points out that there are no other medical opinions which

19

contradict Dr. Sievers' opinion, and that the ALJ's misplaced reliance on a "normal" colonoscopy result to reject the opinion of a treating gastroenterologist is reversible error, and not supported by substantial evidence.  (Doc. 11, at 12.)

The Commissioner responds that the ALJ properly weighed the medical source statements.  (Doc. 14, at 5.)  The Commissioner characterizes Taylor's argument as "the ALJ erred by not giving controlling weight to a check-box form submitted by Plaintiff's treating physician, Dr. Corey Sievers," which form was completed after the hearing, at the request of counsel.  (Doc. 14, at 5.)

The Commissioner argues that the form submitted by Dr. Sievers cannot be considered an "opinion" that would be given controlling weight.  To be considered such a controlling "opinion," the opinion must describe what a claimant is still physically capable of, despite her limitations.  (Doc. 14, at 5, citing 20 C.F.R. § 404.1527(a)(2).)

Section 404.1527(a)(2) provides the following definition:

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2).

The Commissioner also cites Allen v. Commissioner, in which the court found that a physician's responses were "outside the scope of 'medical opinions' as defined in [Section 404.1527(a)(2)," because the doctor's responses addressed the general relationship between the claimant's condition and the symptoms or limitations it

20

may cause, "rather than addressing the specific extent of [the claimant's] limitations."  Allen v. Commissioner, 561 F.3d 646, 651 n.3 (6th Cir. 2009).

The Commissioner contends that, even if Dr. Sievers' check-box form is deemed an "opinion," it was both unsupported and inconsistent with the record, which alone would be reason to discount the opinion.  (Doc. 14, at 6, citing Henke v. Astrue, No. 12-2364, 2012 WL 6644201, at *3 n.3 (7th Cir. Dec. 21, 2012).)  The Seventh Circuit in Henke found that, while the ALJ did not explicitly weigh every factor in Section 404.1527(d), the ALJ noted the lack of medical evidence supporting the opinion, and its inconsistency with the rest of the record, which was enough.  Henke, 2012 WL 6644201, at *3 n.3.  It is noteworthy, however, that the ALJ in Henke "more than minimally articulated her rationale" for rejecting the opinion at issue.  The ALJ emphasized that the doctor's "sweeping conclusions" lacked support in his own treatment notes.  Id. at *3.  In addition, the ALJ discounted the opinion because its conclusions were based in part on limitations "that were otherwise absent from the medical record, were never treated, and were unsupported by any objective medical evidence."  Id.

It cannot be said here that Taylor's complaints related to her IBS are absent from the medical record, or were never treated.  As the medical evidence recited earlier demonstrates, Taylor suffered from IBS for years (see, e.g. tr., at 550, 875, 878), and was treated not only with dietary recommendations, but with prescription medication over a period of time.

The Commissioner also contends that the ALJ is not required to discuss every factor in Section 1527(c), but is required only to include "good reasons" for the weight given to the physician's opinion, not an exhaustive factor-by-factor analysis. (Doc. 14, at 7, citing Francis v. Commissioner, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. Mar. 16, 2011).) The Commissioner asserts that the ALJ's finding that the opinion at issue was inconsistent with the medical record, and appeared to rely solely on Taylor's subjective complaints, were sufficient "good reasons." (Doc. 14, at 7.)

The Commissioner argues that the ALJ properly found that the record does not support Taylor's testimony that her IBS symptoms had been present at similar levels for two to three years at the time of the hearing, and that her treatment had been largely preventative. (Doc. 14, at 8-9.) The Commissioner then goes into an extended examination of the medical records, in support of the argument that the record supports the ALJ's findings. Id.

Whatever the merits of that evidence, it is not to be found cited in the ALJ's decision. See generally tr., at 32. "A fundamental rule of administrative law is that a reviewing court must judge the propriety of the action solely on the grounds invoked by the agency." Roper v. Secretary, HHS, 769 F.Supp. 243, 247 (N.D. Ohio 1990) (citing SEC v. Chenery, 332 U.S. 194, 196 (1947)). The court may not rely on counsel's ad hoc rationalizations. May v. Astrue, No. 4:10CV1533, 2011 WL 3490186, at *9 (N.D. June 1, 2011); Roper, 769 F.Supp. at 247. The decision must be evaluated on the basis articulated by the ALJ. Roper, 769 F.Supp. at 247. In

22

her discussion of Taylor's IBS and Dr. Sievers' related opinion, the ALJ asserts that the medical record does not support Taylor's allegations, and that Dr. Sievers' opinion is inconsistent with the record, yet the ALJ does not cite to any portion of the record in support of her findings.  See generally tr., at 32.

The undersigned finds that the ALJ's decision concerning the weight given to the opinion of Dr. Sievers is not sufficiently specific to make clear the weight assigned to the treating physician's opinion, and does not give good reasons for that weight.  The court should accept the first assignment of error, and remand for further consideration of the treating physician's opinion and the weight to be assigned to it.

### B.  Second and Third Issues

The second and third issues are related, and will be addressed together.  Both concern the ALJ's findings concerning bathroom breaks, which is set forth in the ALJ's decision as follows:

> . . . largely as a precaution, I find that claimant must have the ability to take short bathroom breaks in addition to the standard average of two per workday.  These breaks shall last no more than five minutes in duration on average.  Finally, the claimant must have close proximity or access to the bathroom.

(Doc. 9, tr., at 32.)

The second issue raised by Taylor is "Did the ALJ err by assigning a residual functional capacity that is not supported by substantial evidence?"  (Doc. 11, at 13.)  Taylor specifically takes issue with the ALJ's finding that her bathroom breaks last

no longer than five minutes.  Taylor contends that there is no evidence in the record that her bathroom breaks "ever last five minutes or less," and no physician offered such an opinion.  (Doc. 11, at 13.)

Taylor argues that the ALJ arbitrarily picked an amount of time that Taylor would be off-task to use the bathroom, but did not point to any evidence, let alone substantial evidence, supporting her opinion in that regard.  Taylor contends that the RFC finding must be reversed.  (Doc. 11, at 14.)

The Commissioner responds that the ALJ in fact found that Taylor's bathroom breaks could last "no more than five minutes in duration on average." (Doc. 14, at 11, quoting tr., at 32.)  The Commissioner points to Taylor's hearing testimony that such breaks are "[u]sually at least five minutes.  It's been as long as 20." (Doc. 14, at 11, quoting tr., at 65.)  The Commissioner asserts that it was not unreasonable for the ALJ to assign a limitation that her breaks would usually need to be approximately five minutes, leaving open the possibility that those breaks would sometimes be longer, and sometimes shorter.  Id.

The third issue raised by Taylor is "Did the ALJ err by finding work available in the national economy despite a residual functional capacity finding that allows for unlimited 5-minute breaks throughout the day?"  Taylor notes that the ALJ never defined how many "short bathroom breaks" she would require in an average workday, and thus it is unclear how the ALJ is restricting Taylor.  (Doc. 11, at 14.)

The Commissioner responds that, although the ALJ's finding does not specify how many additional breaks Taylor would require, the VE testified that up to

24

approximately three additional breaks of no more than five minutes each would be acceptable, and would not reduce the occupational base.  (Doc. 14, at 11, citing tr., at 69-74.)  The Commissioner argues that, even on her worst days (8-12 bathroom breaks), the ALJ's RFC would reasonably accommodate her limitations.

Taylor responds, however, that the VE testified that the jobs identified in his testimony would allow up to three additional breaks (beyond the standard two) maximum, thus Taylor would be incapable of the performance of substantial gainful activity.  (Doc. 15, at 4, citing tr., at 74-75.)

Even if the ALJ's finding that Taylor's bathroom breaks could last "no more than five minutes in duration on average" could be supported by substantial evidence in the record, the court finds that the ALJ failed to define how many "short bathroom breaks" Taylor would require in an average workday, and thus it is unclear how the ALJ is restricting Taylor in that regard.

The undersigned finds that the ALJ's decision concerning the undetermined number of "short bathroom breaks" is vague, is not sufficiently specific, and is not supported by evidence in the case record.  The court should accept the third assignment of error, and remand for further consideration of the issue of bathroom breaks.

SUMMARY

The court finds that the decision of the Commissioner is not supported by substantial evidence.  The record evidence as discussed in the ALJ's decision is not

25

such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination.  The decision of the ALJ should be remanded.

## RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be **REMANDED**.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  July 12, 2016

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).